# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GENERAL CONFERENCE OF THE EVANGELICAL METHODIST CHURCH, a not-for-profit Indiana corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEW HEART COMMUNITY FELLOWSHIP, INC., now known as, THE CROSSING CHURCH, INC, a not-for-profit Idaho corporation,<br><br>Defendant. | Case No.: 11-CV-00643-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**RULE 12(b)(6) MOTION TO DISMISS (Docket No. 5)**<br><br>**MOTION TO COMPEL ARBITRATION (Docket No. 4)** |

Pending before the Court is Defendant's Motion to Dismiss (Docket No. 5) and Plaintiff's Motion to Compel Arbitration (Docket. No. 4). Having reviewed the record, heard oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND[1]

What happens to the tangible property of faith when a local church decides to leave its ecclesiastical parent? Such is the question presented in this case involving a property dispute between a Christian faith denomination and those involved with one of its member churches.

---

[1] For the purposes of Crossing's Motion to Dismiss only, this "Background" section accepts the allegations raised in Plaintiff's Complaint. *See infra* at pp. 4–12.

**MEMORANDUM DECISION AND ORDER - 1**

In early 2004, representatives of the Evangelical Methodist Church ("EMC")  met with Randy Reams and others regarding the possibility of forming (referred to as "planting") an EMC church in Nampa, Idaho. Williamson Aff., ¶ 8, Ex. A-4, (Docket No. 4-2).Subsequently, Reams and his group created the "New Heart Community Fellowship Evangelical Church of Nampa" and signed an "Affiliation Resolution" agreement with EMC in which it agreed to follow "that collection of rules and procedure and organization entitled *Discipline of the Evangelical Methodist Church,* which shall be called the *Discipline.*" Compl., ¶ 6 (Docket No. 1). Later that year, New Heart became a corporate entity registered with the Idaho Secretary of State as New Heart Community Fellowship, Inc. ("New Heart").  *See id*. at ¶ 7.  Reams was the new pastor of the church, and continued in that capacity at all times otherwise pertinent to this case.

Some five years later, Reams informed an EMC Conference Superintendent that he had resigned as pastor of New Heart and was serving as pastor for a new church. The new church, named "The Crossing" ("Crossing), was incorporated on July 10, 2010.  At the time Reams told EMC of his resignation from New Heart, the "new church" was already holding its services in the same leased space where New Heart had conducted its services and operated its church. New Heart, on the other hand, was no longer conducting services or other church activities. *See id*. at ¶¶ 12, 14. Additionally, the members of New Heart now made up the membership of Crossing. Crossing had the same president, secretary, and directors.  Crossing created its own website; however, many of its pages were identical to pages found on the New Heart website. Cowell Aff., Exs. B-1 and B-2, (Docket No. 4-3).

EMC sues "New Heart Community Fellowship Inc., now known as The Crossing Church, Inc.," contending that Crossing is simply a continuation of New Heart under a new

**MEMORANDUM DECISION AND ORDER - 2**

name, not a "new church" as Pastor Reams claimed.  Mem. in Support of Mot. to Compel Arb. (Docket No. 4-1). EMC's dispute with New Heart/Crossing involves a disagreement as to whether New Heart has withdrawn from its association with EMC, the status of an outstanding debt allegedly owed by New Heart to EMC of $93,340.20, and the ongoing use of real property originally leased to New Heart, now being used as worship space for Crossing.  *Id*. at ¶ 30.

In 2011, after the disagreement first arose, EMC Conference Superintendents sent a letter requesting that New Heart participate in an alternative dispute resolution process, pursuant to section 701 of the Discipline. *See id*. at ¶ 24. The Discipline provides two avenues for a local church to depart from, and to remove property from, the EMC denomination:  EMC's General Council can choose to disaffiliate the local church under § 609 of the Discipline, or the local church can withdraw from the EMC by conducting a withdrawal vote following the requirements of § 209 of the Discipline.  Compl. ¶ 9. However, before a local church may take a withdrawal vote, a Conference Superintendent must certify that the local church has repaid all "grants, loans and monies disbursed to that local church by the denomination for any and all purposes." Memo. Mot. to Compel Arb, (Docket No. 4-2). If a church withdraws from EMC, then "all conference funding must be returned to the appropriate conference." *Id.* Additionally, § 209 of the *Discipline* requires that an EMC superintendent preside over any vote regarding "the local church's conveying, selling, exchanging or encumbering of property in connection with, or in any way related to, a withdrawal." Compl. at ¶ 19.

EMC contends that neither of these steps for withdrawal was followed.  EMC has not disaffiliated New Heart under § 609 of the Discipline as no vote to withdraw, presided over by

**MEMORANDUM DECISION AND ORDER - 3**

an EMC Superintendent, has occurred, nor has a proper local church withdrawal election been held *Id.* at ¶ 10.  New Heart has not repaid the $93,340.20 it received from EMC between 2004 and 2009.  *Id.* at ¶ 17. Additionally, the building and real property which New Heart leased for worship during its affiliation with the EMC was sublet to Crossing without the approval of the Conference Superintendent.  *Id.* at ¶ 19.

Now, EMC seeks an order enforcing the alternative dispute resolution process called for by § 701 of the Discipline. Crossing seeks to dismiss the action, contending that EMC has no right to seek relief against Crossing, because New Heart, not Crossing, was the entity which affiliated with EMC.  Def.'s Mem. on Mot. to Dismiss (Docket No. 6-2).

## II.  DISCUSSION

**A.      Defendant's Motion to Dismiss (Docket No. 5)**

      1.      Standard of Law

Judicial review of Crossing's motion to dismiss is focused upon whether EMC's Complaint states a claim upon which relief can be granted. *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 960 (9th Cir. 2009) *on reh'g en banc,* 614 F.3d 1070 (9th Cir. 2010). FRCP 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  However, although a complaint attacked by an FRCP 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.

**MEMORANDUM DECISION AND ORDER - 4**

The facts alleged in the complaint are taken as true for the purposes of assessing the 12(b)(6) motion. *Mohamed*, 579 F.3d 943 at 949. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it does require more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009).

Even if the Court finds the Complaint insufficient under these standards, a dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment."  *Simpson*, 452 F.3d at 1046.  "In dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *See Nampa Classical Acad. v. Goesling*, 2010 WL 1977434, *5 (D. Idaho 2010) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982))).

**MEMORANDUM DECISION AND ORDER - 5**

2.      <u>Crossing is a Proper Defendant</u>

Crossing contends it is not properly in this lawsuit because the caption of the Complaint reads: "New Heart Community Fellowship Inc., now known as The Crossing Church, Inc." During oral argument, Crossing argued that listing a party as a "now known as" in the caption of the Complaint did not make it a named defendant.

Federal Rule of Civil Procedure 10(a) requires that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties." However, it is generally understood that "the caption of an action is only the handle to identify it" and "ordinarily the determination of whether or not a defendant is properly in the case hinges upon the allegations in the body of the complaint and not upon his inclusion in the caption." *Hoffman v. Halden,* 268 F.2d 280, 303–04 (9th Cir.1950) *overruled on other grounds by Cohen v. Norris,* 300 F.2d 24 (9th Cir.1962).

At oral argument, Crossing argued that it should have been listed as a separate party from New Heart because New Heart and Crossing are two legally distinct entities. The same argument was raised in *Chao v. Concrete Mgmt. Res., L.L.C.*, 2009 WL 564381 (D. Kan. 2009), in which a defendant, listed as a "formerly known as," moved to dismiss the complaint, arguing that it was not a proper party to the action because it was a "separate legal entity" from the first listed defendant. The court denied the defendant's motion to dismiss and allowed the plaintiff to amend the complaint to add the "formerly known as" defendant as a separate party. *Cf. McCracken v. Green Tree Servicing, LLC.*, 279 S.W.3d 226, 227 (Mo. Ct. App. 2009) (court granted the "formerly known as" defendant's motion to dismiss and ordered plaintiff to amend complaint to

**MEMORANDUM DECISION AND ORDER - 6**

include correct party names, but on grounds that defendant who filed 12(b)(6) motion had no

interest in suit and had ceased doing business before alleged offense).

For the reasons discussed below, the Court concludes that EMC has stated a sufficient

claim against Crossing in the substantive allegations of the complaint, regardless of the manner

in which Crossing has been named in the caption. Such allegations sufficiently detail claims

made by EMC against Crossing as either: (1) a new business entity formerly known as New

Heart; or (2) an altogether separate business entity.

Further, Crossing has appeared in this case, even though it has sought to have the claims

against it dismissed at the threshold stage of the lawsuit.  Hence, where the Court is denying

such a motion, Crossing is in the case for all purposes.  However, the case will be more

efficiently contested, and decided, if the complaint is amended to more precisely delineate the

claims made against Crossing as a separate entity, or as a successor entity subject to liability in

the same manner as New Heart, under equitable doctrines of equitable estoppel or alter ego, or

other such similar theories.

Therefore, the Court orders that  Plaintiff file and serve an amended Complaint to clearly

name and bring suit against "The Crossing Church" as a Defendant in this action.  So long as no

new substantive claims are added against either Crossing or New Heart in the amended

complaint, no formal motion to amend will be required.  An answer to said Amended Complaint

by Crossing must be filed within the time prescribed by the federal rules of civil procedure.

Similarly, an answer or other responsive pleading must be filed by New Heart (assuming proper

service) within the time prescribed by the Federal Rules of Civil Procedure.


**MEMORANDUM DECISION AND ORDER - 7**

3.      EMC's Complaint States a Claim on Which Relief Can be Granted

In support of its Motion to Dismiss, Defendant Crossing submitted as Exhibits A and B, the Idaho Secretary of State's web page showing all the filings for New Heart Community Fellowship, Inc., as well as all the filings for Crossing Church, Inc., respectively.[2] While these exhibits show that New Heart and Crossing are legally distinct not-for-profit corporations with different names, that distinction does not necessarily insulate Crossing from Plaintiff's Motion to Compel Arbitration. In *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185 (9th Cir.1986), the Ninth Circuit held that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Id.* at 1187-88.  Among these principles are "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995)).

In order to establish that the relief sought against Crossing (that it be compelled to arbitrate) can be granted, Plaintiff asserts two theories under which Crossing may be bound to the arbitration agreement as a non-signatory – alter ego, and equitable estoppel.

(a)     *Alter Ego*

Crossing is bound to the arbitration agreement if it is the alter ego of New Heart.  In Idaho, there are two elements that "warrant casting aside the legal fiction of distinct corporate

---

[2] While the Court is generally limited to the facts contained in the Complaint for the purposes of evaluating  a 12(b)(6) motion, the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bankruptcy*, 828 F.2d 1385, 1388 (9th Cir.1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir.2004).

**MEMORANDUM DECISION AND ORDER - 8**

existence – first, there must be such a unity of interest and ownership that the individuality of such corporation and such person has ceased, and second, it must further appear from the facts that the observance of the fiction or separate existence would, under the circumstances, sanction a fraud or promote injustice." *Hayhurst v. Boyd*, 50 Idaho 752, 761 (1931).

The Complaint can be construed to allege that injustice would be promoted by observing a fiction of New Heart and Crossing's separate existence because EMC posits that New Heart cannot be allowed to avoid its obligations under the Discipline by simply changing its name. Crossing argues that because "New Heart did not and does not control Crossing and Crossing does not control New Heart" there can be no piercing of the corporate veil. Reply to Pl.'s Opp. to Mot. to Dismiss (Docket No. 14-3). However, while showing that there is or is not "control" may be a factor in determining whether there is "unity of interest," such an element of control is not a requirement under Idaho law to find that an alter ego exists. As previously noted, the Complaint alleges Crossing: (1) uses the same leased premises as New Heart; (2) uses personal property on that site which belonged to New Heart; (3) employs the same pastor as New Heart and also includes "former" New Heart members; (4) has many of the same directors and officers as New Heart; and (5) describes its "story," "ministries" and "vision" using much of the exact verbiage New Heart had used on its website. Compl. at ¶¶ 12-14. Taking these facts as true, EMC has sufficient evidence to pursue a claim that Crossing is the alter ego of New Heart.[3]

---

[3] In Idaho, an alter-ego claim is generally used to allow the courts to disregard the corporate entity, allowing for individual shareholders, directors or officers (i.e. the "alter-egos") to be held liable in certain circumstances—not necessarily another corporation. *E.g. Maroun v. Wyreless Systems, Inc.*, 141 Idaho 604, 616 (Idaho 2005); *Sirius LC v. Erickson*, 150 Idaho 80, 85 (2010); *Vanderford Co., Inc. v. Knudson*, 144 Idaho 547, 556-557 (Idaho 2007). However, in at least one case in Idaho, the Court examined the unity of interest and ownership between two

**MEMORANDUM DECISION AND ORDER - 9**

(b)    *Equitable Estoppel*

EMC argues in the alternative that Crossing is barred from asserting its "new church"
argument by the doctrine of equitable estoppel.  Equitable estoppel "precludes a party from
claiming the benefits of a contract while simultaneously attempting to avoid the burdens that
contract imposes." *Comer* at 1101 (9th Cir. 2006) (citing *Wash. Mut. Fin. Group, LLC v. Bailey,*
364 F.3d 260, 267 (5th Cir.2004)). In the arbitration context, *non-signatories* have been held to
arbitration clauses where the non-signatory "knowingly exploits the agreement containing the
arbitration clause despite having never signed the agreement." *Id.* (citing *DuPont,* 269 F.3d at
199).

Crossing, however, argues that "the Complaint raises no allegation that Crossing is
seeking any benefit from EMC under its Discipline." Reply to Pl.'s Opp. to Mot. to Dismiss
(Docket No. 14-2). Crossing contends that it did not seek to obtain any benefits under the EMC
Discipline, therefore, estoppel cannot apply. *See id.*  EMC responds that because Crossing has
reaped the benefits of EMC's funding and establishment of New Heart by continuing to operate
the church under a new name, Crossing is estopped from avoiding the burdens of repaying the
funds before departing EMC and arbitrating all disputes. Pl.'s Opp. to Mot. to Dismiss (Docket
No. 12). In particular, the Complaint alleges that Crossing: (1) uses the same leased premises as
New Heart; (2) uses personal property on that site which belonged to New Heart; (3) employs

---

corporations to determine whether they had ceased to separately exist. *Alpine Packing Co. v.
H.H. Keim Co., Ltd.*, 121 Idaho 762, 766, (Idaho Ct. App. 1991).  The Court is not aware of any
reason why an alter-ego theory cannot apply with equal measure on these facts, although that
issue may well be the subject of further motion practice or proof at trial..

**MEMORANDUM DECISION AND ORDER - 10**

the same pastor as New Heart and also includes "former" New Heart members; (4) has many of the same directors and officers as New Heart; and (5) describes its "story," "ministries" and "vision" using exactly the same words New Heart had used on its website. Compl. at ¶¶ 12-14. These facts are taken as true for the purposes of assessing the 12(b)(6) Motion.

Assuming the allegations in the Complaint are true, EMC has a claim against the Crossing which could be enforced under a theory of equitable estoppel. The Discipline provides that a local church may not transfer, sell, exchange or encumber property in connection with or in any way related to a withdrawal from EMC without Conference approval. Because of New Heart's affiliation with EMC, it was granted money to assist in establishing the church, and to secure a facility for use as a church, the same property which Crossing now uses for its own worship. Because the Complaint sufficiently alleges that Crossing is attempting to claim the benefits of a contract (the church premises and funding) while simultaneously attempting to avoid the burdens that contract imposes (arbitration), EMC has stated a claim against Crossing for which relief can be granted.

In summary, whether under either a theory of equitable estoppel or alter ego, Plaintiff's allegation that Crossing is merely a continuation of New Heart under a different name is more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  Instead, they allow this Court "to draw the reasonable inference that the [individual Defendants] [are] liable for the misconduct alleged." *Iqbal,* U.S. 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 50). The Complaint specifically alleges, " . . . there does not appear to be a 'new church' as Reams represented to Rev. Cowell but rather a continuation of New Heart operations by exactly the

**MEMORANDUM DECISION AND ORDER - 11**

same people and in exactly the same space under a new name." *See id*. at ¶ 22.  Viewing the totality of the allegations through the lens of judicial experience and common sense, this Court finds that EMC has "plea[d] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 550, 127 S.Ct. 1955). Through its pleadings, EMC has positioned its claims against Crossing such that a court could grant the relief sought, and at this point, Plaintiff is allowed to proceed with the claims set forth in the Complaint.

**B.     Plaintiff's Motion to Compel Arbitration is Denied Without Prejudice (Docket No. 4)**

The second issue before the Court is whether to grant Plaintiff's Motion for an Order to Compel Arbitration. During the hearing on the Motion to Dismiss, counsel for Plaintiff indicated her intention to supplement the Motion to Compel with discovery conducted after the original filing of the Motion to Compel Arbitration.  However, given the ruling upon the Defendant's Motion to Dismiss, the Motion to Compel Arbitration is premature pending the filing of an amended complaint and answer. Therefore, for efficiency's sake, the Motion to Compel Arbitration is denied, without prejudice to re-file

### III.  ORDER

Based upon the foregoing, IT IS HEREBY ORDERED THAT (1) Defendant's 12(b)(6) Motion to Dismiss (Docket No. 5) is DENIED, and (2) Plaintiff's Motion to Compel Arbitration (Docket No. 4) is DENIED, without prejudice.

**MEMORANDUM DECISION AND ORDER - 12**

**<u>IT IS FURTHER ORDERED THAT PLAINTIFF SHALL FILE AN AMENDED</u>**

**<u>COMPLAINT WITHIN 14 DAYS FROM THE DATE OF THIS ORDER.</u>**



DATED:  **July 17, 2012**

_____

Honorable Ronald E. Bush

U. S. Magistrate Judge