UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GENERAL CONFERENCE OF THE EVANGELICAL METHODIST CHURCH, <br><br>        Plaintiff, <br><br>        v. <br><br> THE CROSSING CHURCH, INC., f/k/a New Heart Community Fellowship, Inc., <br><br>        Defendant. | Case No.  1:11-cv-00643-REB <br><br> **MEMORANDUM DECISION AND ORDER RE:** <br><br> **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 36)** <br><br> **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 46)** |

Currently pending before the Court are (1) Plaintiff's Motion for Summary Judgment (Docket No. 36) and (2) Defendant's Motion for Summary Judgment (Docket No. 46).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  BACKGROUND

What happens to the tangible property of faith when a local church decides to leave its ecclesiastical parent?  Such is the question presented in this case involving a property dispute between a Christian faith parent denomination and those involved in one of its member churches.

In early 2004, representatives of the Evangelical Methodist Church ("EMC") met with Randy Reams and others regarding the possibility of forming an EMC church in Nampa, Idaho. *See* Pl.'s SOF, p. 1 (Docket No. 36, Att. 2).[1]  On January 24, 2004, New Heart Community

---

[1]  Defendant's briefing describes certain pertinent facts from the Defendant's perspective, but otherwise Defendant does not independently respond to EMC's Separate Statement of Material Facts nor submits its own Separate Statement of Material Facts. *See* Dist. Idaho Loc. Civ. R. 7.1(c)(2) & 7.1(b)(1).

**MEMORANDUM DECISION AND ORDER - 1**

Fellowship, Inc. ("New Heart") executed the "Affiliation Resolution" to join EMC as the "New Heart Community Fellowship Evangelical Church of Nampa," requesting and confirming affiliation with EMC.  *See id.* at p. 2.  Relevant here, by signing the Affiliation Resolution with EMC, New Heart agreed to follow "that collection of rules and procedure and organization, entitled, *Discipline of the Evangelical Methodist Church*, which shall be called the *Discipline*" (the "Discipline").  *See* Pl.'s Am. Compl., ¶ 6 (Docket No. 21); *see also* Def.'s Ans., ¶ 6 (Docket No. 23).[2]

On November 10, 2009, Mr. Reams – who, up until that time, had been serving as pastor for New Heart – informed an EMC Conference Superintendent that he was acting as pastor for a "new church," The Crossing Church, Inc. ("Crossing");[3] Crossing was incorporated on or around July 20, 2010.  *See* Pl.'s SOF, p. 2 (Docket No. 36, Att. 2); *see also* Pl.'s Am. Compl., ¶¶ 12-14 (Docket No. 21); Def.'s Ans., ¶¶ 12-14 (Docket No. 23).[4]  Though Crossing was now its own,

---

[2]  It is undisputed that the Discipline provides only two means for a local church to depart and remove property from EMC's denomination: (1) EMC's General Council disaffiliates the local church under section 609 of the Discipline; or (2) the local church withdraws from the denomination under section 209 of the Discipline.  *See* Pl.'s Am. Compl., ¶¶ 9 & 11 (Docket No. 21); *see also* Def.'s Ans., ¶¶ 9 & 11 (Docket No. 23).  Additionally, it is undisputed that section 701 of the Discipline requires local churches to resolve any property disputes with EMC via "Christian conciliation, mediation, or arbitration."  *See id.* at ¶ 27.

[3]  According to Mr. Reams, he had to resign as the pastor at New Heart because he could not agree with EMC's doctrine of *Entire Sanctification*.  *See* 9/5/12 Reams Aff. at ¶¶ 5-7 (Docket No. 28, Att. 1).

[4]  It is unclear whether, at this time, Mr. Reams communicated that he had resigned as pastor of New Heart or if he would be acting as pastor at both New Heart and Crossing.  *Compare* Pl.'s Am. Compl., ¶ 12 (Docket No. 21) (indicating Mr. Reams had resigned as pastor of New Heart) *with* Pl.'s SOF, p. 2 (Docket No. 36, Att. 2) (indicating Mr. Reams was still acting as pastor of New Heart as of July 2010) *with* Def.'s Opp. to Pl.'s Mot. for Summ. J., p. 2 (Docket No. 38) (highlighting that, in August 2010, Mr. Reams advised others that he would be resigning as pastor of New Heart).  However, any uncertainty in this respect is immaterial toward resolving the parties' cross motions for summary judgment.

**MEMORANDUM DECISION AND ORDER - 2**

distinct corporate entity, it nonetheless held its services in the same leased space as where New Heart had conducted its services and operated its church, while also using property obtained from New Heart. *See id.* Moreover, New Heart's members became Crossing parishioners;[5] Crossing had the same pastor, president, secretary, and directors as New Heart; Crossing had a website very similar to New Heart's; and Crossing's Articles of Incorporation were the same as or very similar to New Heart's Articles of Incorporation. *See id.*

Also relevant here, as of the Summer of 2010, it is undisputed that New Heart owed approximately $93,340.20 to EMC. *See id.* at ¶ 16. EMC contends that Crossing is responsible for this amount because (1) Crossing is simply a continuation of New Heart's operations under a different name and, thus, Crossing and New Heart are actually one-and-the-same, despite having different corporate identities; (2) EMC's General Council never disaffiliated New Heart/Crossing under section 609 of the Discipline; and (3) New Heart/Crossing never withdrew from the church pursuant to section 209 of the Discipline. *See id.* at ¶¶ 10, 12, 14-18, & 22 ("In essence, there does not appear to be a "new church" as [Mr.] Reams represented . . . but rather a continuation of New Heart operations by exactly the same people and in exactly the same space but under a new name."). Therefore, in this lawsuit, EMC seeks to enforce section 701 of the Discipline, compelling arbitration between it and Crossing to account for New Heart's/Crossing's alleged outstanding obligations to EMC – indeed, EMC's Amended

_____

[5] According to Crossing, in August, September, and October of 2010, Mr. Reams met with the individual adult members of New Heart's congregation and told them of his decision to resign and that they could continue attending New Heart. *See* Def.'s Opp. to Pl.'s Mot. for Summ. J., p. 2 (Docket No. 38). Apparently, "[e]ach member of the New Heart congregation decided that they would rather follow [Mr.] Reams to a new church rather than stay at New Heart." *See id.*

**MEMORANDUM DECISION AND ORDER - 3**

Complaint identifies this single, sought-after remedy.  *See, e.g.*, *id.* at ¶¶ 32-33 (Docket No. 21) ("Through this action, the EMC seeks an order from this Court directing New Heart[6] to comply with the dispute resolution process in [section] 701 of the Discipline, including arbitration.  The EMC seeks no relief from this Court other than an order compelling arbitration.").

EMC now moves for summary judgment on its Complaint to compel arbitration against Crossing on the grounds of alter ego/successor liability and equitable estoppel.  *See* Pl.'s Mem. in Supp. of Mot. for Summ. J., p. 4 (Docket No. 36, Att. 1).[7]  Crossing opposes EMC's motion for summary judgment (and files a motion for summary judgment of its own), arguing that it is not New Heart's alter ego/successor and, as a result, cannot be compelled to arbitrate a non-

---

[6]  It is assumed that EMC's reference to "New Heart" here is a remnant of EMC's original Complaint for an Order to Compel Arbitration (Docket No. 1) to the extent that EMC *actually* seeks to compel Crossing to submit to some form of alternate dispute resolution.  *See, e.g.*, Pl.'s Renewed Mot. for Order to Compel Arb., p. 1 (Docket No. 25) ("Plaintiff respectfully requests that this Court issue an order compelling Defendant Crossing . . . to participate in conciliation, mediation, or arbitration.").  The distinction is only worth mentioning given this action's procedural backdrop thus far – namely, Crossing's January 3, 2012 motion to dismiss (Docket No. 5) dealing with, in part, the alleged relationship between New Heart and Crossing; that is, whether the two entities are actually one-and-the-same.

[7]  In its January 7, 2013 Order denying (for procedural reasons) Plaintiff's Renewed Motion for Order to Compel Arbitration (Docket No. 31), the undersigned indicated that "EMC may file an appropriate motion seeking an order compelling arbitration against New Heart, and is permitted to move the Court accordingly" and that "[t]he parties are informed that the Court is inclined on the current record (if that is essentially the record that would then also support such a motion directed at New Heart alone) to order that such an arbitration take place.  *See* 1/7/13 Order, p. 3 (Docket No. 31).  Through its pending motion for summary judgment, EMC "simultaneously moves for summary judgment on its motion to compel arbitration against New Heart, which the Court has already indicated it is disposed to grant."  *See* Pl.'s Mem. in Supp. of Mot. for Summ. J., p. 4 (Docket No. 36, Att. 1).  The Court will interpret such a request, couched within a memorandum in support of an altogether separate motion for summary judgment, as a discrete motion to compel arbitration against New Heart.  There is no opposition to such a request and, therefore, said motion is granted.  To the extent any issue existed before, New Heart is now ordered to participate in the alternative dispute resolution process.

**MEMORANDUM DECISION AND ORDER - 4**

existent dispute between it and EMC (or, said another way, a dispute between EMC and New Heart) under the Discipline's provisions.  *See* Def.'s Opp. to Pl.'s Mot. for Summ. J., pp. 4-7 (Docket No. 38); *see also* Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 4-8 (Docket No. 46, Att. 1).

## II. <u>DISCUSSION</u>

### A.     **Summary Judgment: The Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247-48.

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party and the Court must not make credibility findings.  *See id*. at 255.  Direct testimony of the non-movant must be believed, however implausible.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the

**MEMORANDUM DECISION AND ORDER - 5**

other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *See Celotex*, 477 U.S. at 324.

As a general rule, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). An exception to this rule exists when cross-motions for summary judgment are filed. In that case, the Court must independently search the record for issues of fact. *See Fair Housing Council of Riverside Co., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER - 6**

**B.      "Crossing" is the Alter Ego of "New Heart"**

There is no question that New Heart is subject to the Discipline's alternative dispute resolution provisions – to be sure, the undersigned has already indicated that it would order such relief if EMC so requested.  *See supra*.  Crossing agrees that it is also subject to the Discipline's mandate *if* it is New Heart's alter ego, acknowledging that, "if Crossing is, in fact, the alter ego of New Heart, . . . Crossing *must participate* in alternate dispute resolution with EMC."  *See* Def.'s Opp. to Pl.'s Mot. for Summ. J., p. 6 (Docket No. 38) (emphasis added); *see also* 1 Domke on Com. Arb. § 13:12 ("As a general rule, a successor corporation which is merely the 'alter ego' of the predecessor is bound by the arbitration clause of an agreement made by the predecessor.").  Both parties agree that, in Idaho, there are two elements that warrant casting aside the legal fiction of distinct corporate existence – first, there must be such a "unity of interest" between the two at-issue corporations such that the separate personalities do not exist; and, second, it must further appear from the facts that the observance of the fiction or separate existence would, under the circumstances, sanction a fraud or promote injustice.  *See  Hayhurst v. Boyd*, 300 P. 895, 898-99 (Idaho 1931); *see also* Pl.'s Mem. in Supp. of Mot. for Summ. J., pp. 5-6 (Docket No. 36, Att. 1) (citing *Hayhurst*, 300 P. at 898-99); Def.'s Opp. to Pl.'s Mot. for Summ. J., p. 5 (Docket No. 38) (citing *Alpine Packing Co. v. H.H. Keim Co., Ltd.*, 828 P.2d 325, 326 (Idaho 1991)).  Each of these elements exists here.

First, the unity of interest between New Heart and Crossing is evident when examining the undisputed relationships between the two entities: (1) Crossing operates in the same physical space that New Heart operated; (2) Crossing uses the same personal property that once belonged to New Heart; (3) Crossing's congregation is made up of members that were previously

**MEMORANDUM DECISION AND ORDER - 7**

members of New Heart; (4) during the transition from New Heart to Crossing, church services were uninterrupted and there were never separate services for New Heart and Crossing; (5) the people who were New Heart's directors are now Crossing's directors; (6) on its website, Crossing originally described its "story" and "ministries" using the exact same words New Heart used on its website; (7) the Articles of Incorporation for Crossing were the same or similar to New Heart's Articles of Incorporation; and, finally, (8) Mr. Reams was the pastor of New Heart before becoming the pastor of Crossing.  *See* Pl.'s Mem. in Supp. of Mot. for Summ. J., p. 3 (Docket No. 36, Att. 1); *see also* Def.'s Mem. in Supp. of Mot. for Summ. J., p. 4 (Docket No. 46, Att. 1).  In other words, nothing distinguished what *is* Crossing from what *was* New Heart – their respective overarching interests, conduct, and control merge together to resemble one another, albeit with different names.[8]  Under the facts and circumstances contained in the record, no reasonable juror could find otherwise.

---

[8]  Crossing's argument that it does not own New Heart (EMC does) and, therefore, cannot be New Heart's alter ego (*see* Def.'s Mem. in Supp. of Mot. for Summ. J., p. 6 (Docket No. 46-1)), while potentially true, is not conclusive of the issue.  Such an argument typically applies when dealing with a situation where a business entity's individual owners are trying to avoid that business entity's obligations.  There, ownership necessarily involves control, allowing courts to pierce the corporate veil to reach the individuals who own the business entity and assign personal liability to them (the "alter egos").  *See, e.g.*, *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 514 P.2d 594, 597 (Idaho 1973) ("While [the fact that Wilford and Berry Hess were the sole stockholders of, and Wilford Hess was the president and manager of, both corporations] would not be conclusive evidence that Wilford and Betty Hess were doing business as individuals, it indicates the degree of control over both corporations which the Hesses possessed."); *Hutchison v. Anderson*, 950 P.2d 1275 (Idaho 1997) (upholding decision to pierce the corporate veil, finding that "there is sufficient evidence to support the district court's finding that a unity of interest existed such that there was no distinction between the personalities of Anderson [individually] and American West.").  Here, while the technical "ownership" as between Crossing and New Heart may not be identical, their make-up and operations indisputably are, thus supporting the finding of a unity of interest between the two in ways that similarly justify the piercing of the corporate veil to assign individual liability to owners of corporations.

**MEMORANDUM DECISION AND ORDER - 8**

Second, ignoring the operational similarities between Crossing and New Heart in favor of strictly recognizing the corporate distinction in only their names would lead to inequitable consequences, given that a business could avoid its obligations though a simple name change with the Secretary of State.  And where would that end? What would stop a business from practicing such maneuvers ad infinitum?  When challenged, such a practice will not stand, and here, Crossing (which uses at least the same space, property, members, directors, pastor, website, and Articles of Incorporation as New Heart) will not be permitted to avoid the obligations under the Discipline to which it agreed when it became a part of EMC as New Heart.

Crossing is New Heart's alter ego and, therefore, is hereby compelled to participate in the alternate dispute resolution process as identified under the Discipline.  EMC's Motion for Summary Judgment is granted in this respect.

**B.      Crossing is Equitably Estopped From Avoiding the Discipline's Alternate Dispute Resolution Provisions**

In addition, Crossing is barred from avoiding the Discipline's alternate dispute resolution provisions under the doctrine of equitable estoppel.  Equitable estoppel "'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'"  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)).  In the arbitration context, non-signatories have been held to arbitration clauses where the non-signatory "'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'"  *Id.* (quoting *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3rd Cir. 2001) (citing *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 778 (2nd Cir. 1995)).

**MEMORANDUM DECISION AND ORDER - 9**

Here, Crossing enjoys the benefit of EMC's contractual relationship with New Heart in that, but for EMC's initial monetary outlay toward establishing New Heart at the outset, there would be no Crossing as it is currently comprised and operating.  Because Crossing is now attempting to claim the benefits of the contractual relationship between EMC and New Heart (the church premises, property, and funding) while simultaneously attempting to avoid the burdens the that contractual relationship imposes (alternative dispute resolution), Crossing is equitably estopped from avoiding the Discipline's alternative dispute resolution provisions. EMC's Motion for Summary Judgment is granted in this respect.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 10**

## III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that  (1) Plaintiff's Motion for Summary Judgment (Docket No. 36) is GRANTED and (2) Defendant's Motion for Summary Judgment (Docket No. 46) is DENIED.  In doing so, the undersigned orders that **both** New Heart and Crossing participate in the alternative dispute resolution process(es) identified within section 701 of the Discipline.[9]

IT IS SO ORDERED.

DATED:  **June 3, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[9]  The Court notes that the Discipline's section 701 indicates that "all disputes between the Parties concerning real and personal property, including all property questions arising out of or related to the withdrawal of a congregation from the EMC, are non-doctrinal disputes" and that, "[i]f the Parties are unable to resolve a future non-doctrinal dispute among themselves, they shall resolve that dispute by means of Christian conciliation, mediation, or arbitration."  *See* Pl.'s Am. Compl., ¶ 27 (Docket No. 21).  Section 701 goes on to state that, "[i]f the Parties do not resolve their dispute through conciliation or mediation, they agree to proceed to legally binding arbitration . . . ."  *See id.*  The record is not clear as to the parties' specific previous attempts, if any, toward resolving the instant dispute and, therefore, this Court only orders that New Heart and Crossing participate in the alternative dispute resolution process(es) identified within section 701 of the Discipline.

**MEMORANDUM DECISION AND ORDER - 11**